[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION AND JUDGMENT ENTRY
* * * * *
This case is before the court on appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, which granted permanent custody of Linda M., born July 30, 1985, Joanne M., born February 18, 1989, and May Ellen M., born March 12, 1990, to appellee the Lucas County Children Services Board ("LCCSB") and thereby terminated the parental rights of Steven M. and appellant Denise M., the natural parents of the three girls.
The facts of this case are as follows. Denise and Steven M., who have been together since 1980 and married since 1991, separated in February 1994, and in April of that same year Steven M. and the children moved in with Karl Wassam, whom Steven had known for approximately two months. At this same time, Denise M. moved in with a new boyfriend named Oliver. The children lived with Steven and Karl because Steven worked two jobs and Karl was able to watch the children while Steven was working. By August, however, Denise and Steven reconciled and on the evening of September 4, 1994, Steven and Denise went out while Karl watched the children. The next morning, May Ellen was in obvious distress and Denise took her to the hospital where it was discovered that she had a ruptured colon and human bite marks on her arms, shoulders and lower stomach.
On September 8, 1994, LCCSB filed a complaint in the lower court alleging that Joanne M., Linda M. and May Ellen M. were abused, neglected and dependent children. The complaint also alleged that May Ellen was at that time hospitalized with severe injuries received as a result of physical abuse by a "friend," that both Joanne M. and Linda M. revealed that they also had been physically abused by their father's "friend" and that their father knew of the abuse. Denise and Steven M. denied any knowledge of the abuse; however, Steven M. did state that he noticed that May Ellen always seemed to be injured in some way, but Karl always had a good excuse. LCCSB requested temporary custody of the three children. At a shelter care hearing held on the same date, the parties agreed that temporary custody would be awarded to LCCSB.
On October 25, 1994, LCCSB filed the original case plan in the court below. The goal of the case plan was the return of the children to Denise and Steven M. In addition, the plan described the problems of the family and children as follows:
 "1. Mother and father have history of substance use/abuse.
 "2. History of leaving children with inappropriate caretakers.
 "3. Children, due to their ages, unable to protect themselves from abuse.
 "4. Extensive history with LCCS — approximately 15 referrals alleging sexual abuse, physical abuse, neglect and emotional maltreatment.
"5. Children fearful of mother."
The case plan then set forth numerous objectives and required the parents to maintain regular and frequent communication with the LCCSB caseworker; to attend a parenting intake and follow all recommendations of the provider; to submit to a drug and alcohol assessment and follow any and all recommendations of that assessment; and to undergo a psychological evaluation and follow any and all recommendations of that evaluation. On January 13, 1995, an administrative review was filed with the court. The review did not recommend any amendment to the case plan but included an update on the parents' progress with the plan. That update noted that while the caseworker was satisfied with Denise M.'s level of communication, the parents feel that they do not need parenting classes and so the issue of consistent parenting remained an issue for the caseworker. In addition, the review indicated that while each parent left a urine sample in mid-October, the results were unavailable to LCCSB and the parents had refused to submit any further samples for assessment, because they did not believe that they had any drug or alcohol problems. The review further noted that the psychological evaluation of Denise had been initiated but had not been completed and that the evaluation of Steven had been rescheduled several times and had not yet been done. Finally, the review stated that because of delays in implementing case plan services, due to the parents' work schedules and/or the parents' denial of a need for such services, the overall risk to the children remained high. The review therefore recommended that no changes in the case plan or goals be made at that time.
On July 12, 1995, LCCSB filed an amended case plan with the lower court which extended the date for completion of the plan goals from March 8, 1995 to January 31, 1996. The amended case plan also added a new objective, which required Denise and Steven M. to participate in individual and group counseling for domestic violence, and noted that Denise and Steven M. continue to deny any mis-use of drugs or alcohol. Thereafter, on September 6, 1995, LCCSB filed a motion for extension of the temporary custody order. LCCSB asserted that the case had not been adjudicated[1] and that the parents were reluctant to comply with the case plan. LCCSB further stated, however, that following the adjudication/dispositional hearings, if the parents complied with the terms of the case plan, LCCSB expected the children to be reunited with their parents within six months of the order of extension.
In September 1995, appellee filed two amended complaints which made the following additional allegations. Since the filing of the initial complaint, the children have been in therapy with Dr. Terrance Scully who has opined that the children "`have evidenced anxiety related emotional difficulties which appear to be related to alleged mental and physical abuse which they were subjected to while in their birth parent's [sic] custody.'" May Ellen was born cocaine positive due to Denise's smoking of a cocaine laced marijuana joint while pregnant. Despite this and other allegations of drug use during the course of this case, Denise refused to engage in any kind of drug-related services until September 27, 1995. The amended complaints further alleged inappropriate punishment of the children on the part of Denise and cited a specific instance in which Denise locked one of the children in a room with Kujo the family dog, who then bit the child. With regard to Steven M. the amended complaints alleged that while his police record evidences three alcohol related convictions, he admitted to only one and his stepdaughter reports that he drinks excessively. Finally, the amended complaints alleged that while May Ellen was in the hospital a plastic bead was found in her ear and that hospital records noted that the bead had been in the ear for several weeks.
The case proceeded to a hearing on adjudication and disposition on October 2, 1995 at which the parties stipulated that the adjudication and disposition could proceed on the same day, stipulated to the facts alleged in the LCCSB complaints and consented to an adjudication that the children were dependant and abused.
On January 10, 1996, LCCSB filed a motion for permanent custody and another amended case plan which changed the goal of the plan to adoption of all three children. The motion alleged that Denise and Steven M. had not made progress in their case plan since in was initially filed on January 13, 1995, that the children cannot or should not be reunited with their parents within a reasonable time and that permanent custody was in the best interest of the children. The motion for permanent custody was renewed on May 15, 1996, and the case proceeded to a permanent custody hearing on August 20, 1996. At that hearing, numerous therapists and social service agencies' employees testified, as well as appellant and Janet Veres, the children's guardian adlitem. In addition to these witnesses, the court considered the deposition testimony of Dr. Terrance M. Scully, the clinical psychologist who treated the three girls for approximately two years. On September 25, 1996, the trial court filed a judgment entry granting permanent custody of the girls to LCCSB. In particular, the court found that the parents had continuously failed, for a period of six months or more, to remedy the conditions that caused the children to be removed from the family home, and had demonstrated a lack of commitment toward the children. The court then found, by clear and convincing evidence, that the children cannot be reunited with their parents within a reasonable time or should not be, and that the LCCSB made reasonable efforts to avoid the continued removal of the children from the family home, having provided to the parents a variety of case plan services to no avail. Finally, the court found that permanent custody was in the children's best interest. It is from that judgment that appellant now appeals raising the following assignments of error:
 "I. THE TRIAL COURT ERRED IN RULING THAT THE APPELLANT HAD CONTINUOUSLY FAILED, FOR A PERIOD OF SIX MONTHS OR MORE, TO REMEDY THE CONDITIONS THAT CAUSED THE CHILDREN TO BE REMOVED FROM THE FAMILY HOME.
 "II. THE TRIAL COURT ERRED IN RULING THAT THE CSB MADE REASONABLE EFFORTS TO AVOID THE CONTINUED REMOVAL OF THE CHILDREN FROM THEIR FAMILY HOME."
Because they are interrelated, we will address the assignments of error together. The standards for ruling on a motion for permanent custody are set forth in R.C. 2151.353 and R.C. 2151.414[2]. R.C. 2151.353(A)(4) provides that if a child is adjudicated dependent, neglected or abused, the court may commit the child to the permanent custody of the children services agency. R.C. 2151.414 then reads in pertinent part:
 "(B) The court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 "(1) The child is not abandoned or orphaned and the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents;
"* * *
 "(D) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353
[2151.35.3] of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
 "(1) The reasonable probability of the child being adopted, whether an adoptive placement would positively benefit the child, and whether a grant of permanent custody would facilitate an adoption;
 "(2) The interaction and interrelationship of the child with his parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (3) The wishes of the child, as expressed directly by the child or through his guardian ad litem, with due regard for the maturity of the child;
"(4) The custodial history of the child;
 "(5) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
 "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 [2151.35.3] of the Revised Code whether a child cannot be placed with either of his parents within a reasonable period of time or should not be placed with his parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353
[2151.35.3] of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents:
 "(1) Following the placement of a child outside his home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly for a period of six months or more to substantially remedy the conditions causing the child to be placed outside his home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties."
Clear and convincing evidence is that proof which establishes in the mind of the trier of fact a firm conviction as to the allegations sought to be proved. Cross v. Ledford (1954),161 Ohio St. 469. This court will not disturb a trial court's determination relative to the termination of parental rights and an award of permanent custody where such a determination is supported by clear and convincing evidence. In re Adoption ofHolcomb (1985), 18 Ohio St.3d 361, paragraph three of the syllabus.
At the hearing below, five individuals who had worked with Denise, Steven and/or their children testified on behalf of appellee. In addition, the deposition of Dr. Terrance M. Scully, the clinical psychologist who had treated the girls for two years, was submitted for the court's consideration, Denise testified and the court took judicial notice of the prior adjudicated facts. From this testimony, the following scenario of Denise and Steven M.'s history with appellee following the children's removal from their custody was presented. Pursuant to the initial and amended case plans, Denise and Steven M. were required to undergo substance abuse assessments and, if treatment was recommended, to comply with the professional's recommendation. The assessments were completed by Debrine Turner, an assessment counselor for the women's services department at Compass, and included taking a history of usage from each parent. During her assessment, Denise revealed that her alcohol use began in 1975, ceased in December 1994, and that she only drank alcohol two or three times a year. Denise further stated that her marijuana use began in 1973, that she only used marijuana two or three times a year and that she last used it in 1993. Finally, Denise revealed that she used crack cocaine twice in 1989, and that was her only use of that substance. Nevertheless, the record reveals that May Ellen was born cocaine positive. Denise blames this on a joint that she smoked, which unbeknownst to her was laced with cocaine, while she was pregnant with May Ellen. Finally, it is noteworthy that in 1991, Denise was convicted of attempted drug trafficking. Despite this history, Denise denied during these assessments and during group therapy that drugs or alcohol had caused her any problems in her life or that they were presently a problem. Because of this history, however, Turner recommended that Denise regularly attend a twelve-step program, either AA or NA, and that Denise drop off her urine approximately two times per week for drug and alcohol screening. The record reveals that Denise only dropped off her urine once and, despite frequent requests by Stacy Craddolph her LCCSB caseworker, would not attend AA or NA meetings. With regard to Steven's assessment, Steven revealed that he drank alcohol twice a week in the amount of six to eight beers. Moreover, he reported that he drank eight beers on February 20, 1996, the night before his assessment. Steven further revealed that he began using marijuana in 1978, and that he smokes it approximately once a month, last using it in January 1996. Based on her assessment, Turner recommended that Steven attend an outpatient program followed by an extended care program. Steven refused treatment, believing that the programs were unnecessary and that he did not have a problem with drugs or alcohol. Accordingly, Denise and Steven refused to comply with the drug and alcohol issues of the case plan. This refusal affected other aspects of their case plan compliance.
One goal of the case plan was for Denise and Steven to engage in family therapy with Dr. Scully. Dr. Scully, however, testified that he would not meet with them until he had received word from other case plan providers that they had made progress on other aspects of their case plan. Because Denise and Steven did not make progress on the drug and alcohol aspects of their case plan, they were never referred to Dr. Scully for family therapy. In testifying about his treatment of the girls, he stated that all three have been severely affected by their lives with Steven and Denise. May Ellen has attention deficit hyperactivity disorder, Joanne has post traumatic stress disorder, and Linda suffers from significant anxiety problems. He stated that in the two years that he has treated them, all three children have made substantial progress and that they are well adjusted to their foster families. While Dr. Scully could not rule out reunification of the children with their parents, he believed that family therapy with this family could take months or longer, depending on the parents' attitude and whether they were able to take responsibility for protecting and providing for their children.
Another common theme testified to by the witnesses below, was Denise's inability to believe that she and Steven were at all responsible for custody of the children being taken from them. Evidence revealed that while the children were still in their custody, Denise and Steven had been unable to safeguard the children, had ignored signs that Karl had been abusing the children, failed to notice a bead that had been in May Ellen's ear for several weeks, had not kept May Ellen's immunizations current, had never taken the children to a dentist, resulting in tremendous tartar build up, and had never taken Linda, who is severely nearsighted, to an eye doctor. Moreover, when the children were removed from the family home, they were underweight, hungry all the time and extremely weak. In addition, Denise's oldest daughter, Angela W., who is now an adult, revealed to Janet Veres, the guardian ad litem, that Denise would often beat her and her sisters, once threw Angela down the basement stairs when she was recovering from severe injures following a car accident, and depended on Angela to raise the three younger girls. In testifying, Denise blamed Karl and LCCSB for her current predicament. Although she admitted throwing Angela down the basement stairs, she failed to recognize that she engaged in any inappropriate punishment of her children. Finally, she denied any knowledge of Steven's marijuana use.
With regard to the parents' use of case plan services, the record reveals that Steven made no attempt to avail himself of such services. Denise did submit to psychological testing and a diagnostic assessment at Harbor Behavioral Health Care Center. Based on this assessment, Denise was placed in a stress management group. She attended group therapy sessions in that group four or five times but was then transferred to a borderline personality disorder group in February 1996, where she faithfully attended meetings and had some success in discussing her problems. Dr. Joyce Wagner, Denise's primary therapist at Harbor, testified, however, that on a scale of one to five, Denise had achieved only a two and one-half in meeting LCCSB's requirements and doing what was asked of her. Finally, Wagner testified that Denise had participated in the STEP plus parenting program and that she had also made some progress in that program but that she would need to continue both the group therapy and the parenting program.
Finally, Janet Veres, the children's guardian ad litem, submitted a report and testified in support of that report. Veres expressed concern over Denise's refusal to believe that she played any role in the children's being taken into LCCSB's custody and over Denise's refusal to attend AA or NA meetings. Veres also expressed frustration over the fact that these children's lives have been in limbo for two years. She therefore recommended that the children not be returned to their parents.
Upon consideration of the entire record of proceedings in the trial court, we conclude that there was clear and convincing evidence presented at the permanent custody hearing to support the trial court's findings that the parents had continuously failed for a period of six months or more to remedy the conditions that caused the children to be removed from the home and that LCCSB made reasonable efforts to avoid the continued removal of the children from the family home.
Appellant asserts that because the children were removed from the family home because Karl Wassam physically abused May Ellen, and because Karl had been removed from the home, the condition causing removal had been remedied and the record does not support the court's conclusion that R.C. 2151.414(E)(1) was satisfied. This argument, and appellant's attitude throughout the proceedings below, fails to recognize that the evidence revealed the children were removed from the family home not solely because of the abuse. As this court stated in In the Matter of: Shawn W.
(Sept. 30, 1996), Lucas App. No. L-95-267, unreported, "R.C.2151.414(E)(1) refers to the conditions existing at the time of the child's removal." In the present case, those conditions are best evidenced by the original and amended complaints. Those complaints reveal a household in which abuse of the children could be ongoing yet undetected, in which there was ongoing drug use and in which the children were punished in inappropriate ways. At the hearing on temporary custody, Denise and Steven M. stipulated to the truth of those allegations. The record supports the trial court's conclusion that the parents had failed to remedy the conditions that caused the children's removal.
The evidence further supports the finding that LCCSB made reasonable efforts to avoid the continued removal of the children from their family home. By the time of the permanent custody hearing, the children had been out of the home for approximately two years. During this time, an original case plan as well as amended plans had been filed which set forth goals for the parents and services which the parents were to use to achieve those goals. Steven made only slight efforts to participate by obtaining a drug and alcohol assessment. While Denise attended group therapy sessions and parenting classes, Dr. Wagner, her primary therapist, testified that she had not done all that was asked of her.
Accordingly, the trial court did not err in making the findings challenged herein, and the assignments of error are not well-taken.
On consideration whereof, the court finds that substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 _______________________________ Peter M. Handwork, P.J.
JUDGE
 _______________________________ George M. Glasser, J.
JUDGE
 _______________________________ James R. Sherck, J.
JUDGE
CONCUR.
[1] Due to an interlocutory appeal of the trial court's denial of LCCSB's motion for closure of the temporary custody hearing, the temporary custody hearing was not held until October 2, 1995. See In the Matter of: Joanne M., et al. (May 12, 1995), Lucas App. No. L-94-333, unreported.
[2] The versions of these statutes quoted herein are the versions that were in effect during the trial court proceedings. Both statutes have subsequently been amended.